UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
DWAYNE WATSON, *pro se*,                    :
                                            :
                    Petitioner,             :
                                            :          **OPINION AND ORDER**
        -against-                           :            15-CV-4173 (DLI)
                                            :
DHS/ICE,                                    :
                                            :
                    Respondent.             :
-----------------------------------------------------X

**DORA L. IRIZARRY, Chief United States District Judge:**

On July 15, 2015, *pro se* Petitioner Dwayne Watson ("Petitioner") timely filed this petition

(the "Petition") for writ of habeas corpus pursuant to the Antiterrorism and Effective Death Penalty

Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Pet. For Habeas Corpus ("Pet."), Dkt. Entry No. 1.

A jury convicted Petitioner of second degree criminal possession of a weapon, resisting arrest, and

unlawful possession of marijuana in New York State Supreme Court, Queens County.  Petitioner

was sentenced to three and a half years of imprisonment, followed by five years of post release

supervision for the weapon conviction, and a one-year term of imprisonment for resisting arrest,

to run concurrently with his sentence on the weapons conviction.  Sent. Tr. at 8-9, Dkt. Entry No.

9-2.  Petitioner received a conditional discharge for the marijuana possession conviction.  *Id.*

After Petitioner completed his sentence, he served part of his supervised release while

detained by United States Immigration and Customs Enforcement ("ICE").  While Petitioner is no

longer detained, he still is subject to post-release supervision. [1]

---
[1] The nature and status of the ICE proceedings against Petitioner is unclear from the record.

Petitioner challenges his conviction on twelve separate grounds. Petitioner claims: (1) he was denied his right to effective assistance of counsel when his attorney left the courtroom during jury deliberations; (2) his gun possession conviction should be reversed because he possessed the gun in his home; (3) the court erred when it denied his motion to suppress contraband recovered from his home; (4) the indictment was duplicitous; (5) the trial court should have severed the Petitioner's trial from his codefendant's trial; (6) the trial court should have given the jury a temporary innocent possession instruction with respect to the gun possession charge; (7) the court should have instructed the jury on circumstantial evidence; (8) the verdict sheet was incorrect; (9) the court unfairly marshaled the evidence; (10) the evidence was legally insufficient and the verdict was against the weight of the evidence; (11) the prosecutor committed misconduct during summation; and (12) trial counsel was ineffective to the extent that counsel did not preserve grounds (2) and (4) through (11) above for appeal. *See*, Pet. at 6-12, 18-20. The New York State Attorney General, as Respondent, opposes each of Petitioner's claims. *See generally,* Resp.'s Mem. of Law in Opp. to Pet. ("Resp.'s Opp."), Dkt. Entry No. 8-1. For the reasons set forth below, the Petition is denied in its entirety.

## BACKGROUND

### I.      Indictment/Charges

A Queens County, New York grand jury indicted Petitioner for the offenses of: (1) Criminal Possession of a Weapon in the Second Degree (N.Y. Penal Law § 265.03-1(B)); (2) Criminal Possession of a (Defaced) Weapon in the Third Degree (N.Y. Penal Law § 265.02-3); (3) Resisting Arrest (N.Y. Penal Law § 205.30); and (4) Unlawful Possession of Marihuana (N.Y. Penal Law § 221.05). Indictment, Dkt. Entry No. 9-3. Codefendant Mark Brown ("codefendant" or "Brown") was charged in the same indictment with Criminal Possession of a Weapon in the

Second Degree (N.Y. Penal Law § 265.03-1(B)), Assault in the Second Degree (N.Y. Penal Law § 120.05-3), Resisting Arrest (N.Y. Penal Law § 205.30), and Unlawful Possession of Marihuana (N.Y. Penal Law § 221.05).  *See*, *Id.*

## II.    Underlying Facts

The evidence adduced at the jury trial that began on February 14, 2010 revealed the following:  On June 30, 2009, at approximately 11:45 p.m., two New York City Police officers driving in a marked police car saw Bobby Thomas driving a vehicle with a broken headlight.  Trial Transcript ("Tr.") at 300-01, Dkt. Entry Nos. 9-1 and 9-2.  The officers turned on their lights and sirens in an effort to pull Thomas over.  *Id.*  Thomas attempted to evade the police by speeding away.  *Id.*  Thomas almost struck an unmarked police car when he drove through a stop sign and into an intersection.  *Id.* at 22-23, 72-73, 216-17, 301-02.    Thomas drove through several more stops signs and a red traffic signal before he crashed his vehicle into a fence.  *Id.* at 22-23, 72-77, 217, 301-02.   After the crash, Thomas exited the vehicle and continued to flee on foot while the police pursued him.  *Id.* at 23-24, 77-78, 217-18, 302-03.  Two police officers sustained injuries while climbing over fences in pursuit of Thomas.  *Id.* at 79-80, 218-19, 302-03.

Thomas eventually ran into Petitioner's rear basement apartment.  *Id.* at 24-26, 80-81, 219-21, 303-04.   A police officer demanded entry into Petitioner's apartment.  *Id.* at 28, 304.  Petitioner's codefendant, Mark Brown unlocked the apartment door.  *Id.* 29-30.  The officer identified himself and entered the apartment.  *Id.* at 30-31.  Once inside Petitioner's apartment, the officer smelled a strong marijuana odor and saw loose marijuana and a scale on a coffee table in the living room.  *Id.* at 31.  The officer told Brown he was under arrest and directed him to put his hands behind his back.  *Id.* at 32.  Brown refused to comply with the officer's instructions and

backed away from the officer. *Id.* Brown resisted arrest and struggled with the officers until they were able to restrain him. *Id.* at 32-36.

The police also found and seized marijuana and a scale from a center island in Petitioner's kitchen. *Id.* at 39-40, 47-49. After he arrested other individuals present in Petitioner's apartment, an officer heard sounds coming from a bathroom. *Id.* at 36-41. The officer tried to open the bathroom door, but Petitioner, who was inside the bathroom, held the door shut. *Id.* at 41. The officer ordered Petitioner to come out of the bathroom with his hands up, but Petitioner did not comply. *Id.* at 41-42. The officer forced the bathroom door open and, with assistance from other officers, subdued Petitioner. *Id.* at 42-43. Petitioner struggled as officers physically dragged him out of the bathroom and arrested him. *Id.* Inside the bathroom, in an open hamper, an officer found a loaded .40 caliber Glock semi-automatic pistol (the "Glock pistol"). *Id.* at 42-45. The Glock pistol was close enough to where the police found Petitioner that Petitioner could have reached down and picked it up. *Id.* at 44-45.

The officer then entered a bedroom, where he found Thomas hiding under a bed. *Id.* at 45-46. Several officers pulled Thomas out from underneath the bed and arrested him. *Id.* at 46. The officers found another loaded pistol in an open dresser drawer in the bedroom. *Id.* 46-47.

## III.     Suppression Hearings

Before trial, Petitioner moved to suppress the Glock pistol and marijuana because the police had entered his home without a warrant. *See*, *Watson*, 115 A.D.3d at 688. On June 10, 2010 and October 18, 2010, the court held a suppression hearing. *See*, Suppression Hearing Transcript ("Hrg. Tr."), Dkt. Entry No. 9-1. On December 13, 2010, the court orally denied Petitioner's suppression motion, finding that the police justifiably entered Petitioner's apartment in "hot pursuit" of someone who had committed a crime and the officer had probable cause to

arrest Brown and seize the marijuana on the table. *See,* Suppression Hearing Decision Transcript, Dkt. Entry No. 9-1 (citing *People v. Brantley¸* 189 A.D. 886 (2d Dep't 1993)).

## IV.     Trial and Verdict

Petitioner and Brown were tried jointly before a jury on February 14, 2012. At trial, the parties stipulated that the police had recovered marijuana from Petitioner's apartment. Tr. at 258. The parties also stipulated that the guns recovered from Petitioner's home contained insufficient amounts of DNA to allow for comparison. *Id.* at 324-25.

At the conclusion of the state's direct case, Petitioner, through his attorney, moved to dismiss three charges against Petitioner: criminal possession of a weapon in the third degree, resisting arrest, and criminal possession of marijuana. *Id.* at 327. The court granted dismissal of the criminal possession of a weapon in the third degree charge against Petitioner and denied dismissal of the remaining charges. *Id.* at 335-37.

On February 21, 2012, the jury found Petitioner guilty of all remaining charges: criminal possession of a weapon in the second degree, resisting arrest, and unlawful possession of marijuana. *Id.* at 599-602. The jury acquitted Brown of the weapons charge and found him guilty of assault in the second degree, resisting arrest, and unlawful possession of marijuana. *Id.*

## V.     Post-Conviction Proceedings

Petitioner, through a new attorney, appealed his conviction on the same grounds raised in the instant Petition. *See, generally*, Appeal from a Judgment of the Supreme Court, Queens County, Brief on Behalf of Defendant-Appellant, Dkt. Entry No. 9-3. On March 5, 2014, the New York State Supreme Court, Appellate Division, Second Department ("Appellate Division"), affirmed Petitioner's conviction, finding that: (1) the trial court properly denied Petitioner's suppression motion; (2) the evidence adduced at trial was sufficient for a jury to convict Petitioner

of criminal possession of a weapon in the second degree charge, unlawful possession of marijuana, and resisting arrest; (3) the Indictment did not duplicitously charge Petitioner with criminal possession of a weapon; (4) Petitioner failed to establish that reversal of his conviction was warranted by his trial counsel's absence from the courtroom during jury deliberations; and (5) Petitioner's remaining claims were unpreserved for appellate review and, in any event, were without merit. *People v. Watson*, 115 A.D.3d 687 (2d Dep't 2014). The New York Court of Appeals denied Petitioner leave to appeal on August 19, 2014. *People v. Watson*, 23 N.Y.3d 1069 (2014) (table). Petitioner did not file a petition for a writ of certiorari with the Supreme Court of the United States. Thus, the Petition was timely filed in this Court. *See*, 28 U.S.C. § 2254.

## DISCUSSION

### I. Standard of Review

AEDPA narrowed the scope of federal habeas review of state convictions when the state courts have adjudicated a Petitioner's federal claims on the merits. Under the AEDPA standard, which governs the review of petitions challenging state convictions entered after 1996, federal courts may grant habeas relief only if the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision is "contrary to" federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). An "unreasonable application" is one in which "the state

court identifie[d] the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applie[d] that principle to the facts of the prisoner's case." *Id.* at 413. A federal court may not grant relief "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the state court's application must have been "objectively unreasonable." *Id.* at 409. "[A] determination of a factual issue made by a State court shall be presumed to be correct," and "[t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

The Court is mindful that, "[a] document filed *pro se* is to be liberally construed and a *pro se complaint*, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted). Accordingly, the Court interprets the Petition "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (quotations and citations omitted).

## II. Analysis

### A. Claim 1, Ineffective Assistance of Counsel During Jury Deliberations

Petitioner asserts that his counsel's absence during part of the trial jury deliberations violated his Sixth Amendment right to counsel. *See*, Pet. at 6; *See also*, Br. in Supp. of Pet., Ex. 1 to the Pet. ("Pet.'s Br.") at 7, Dkt. Entry No. 1-2. With the court's permission, Petitioner's trial counsel left the courtroom during jury deliberations to attend to another matter. Tr. at 566-69; Pet.'s Br. at 7-8. In the counsel's absence, the jury sent the court two notes. *Id.* at 573-4; Pet.'s Br. at 9. The codefendant's counsel communicated the contents of the jury's first note to Petitioner's counsel by telephone. Tr. at 573-74; Pet.'s Br. at 10. Codefendant's counsel was

unable to reach Petitioner's counsel to discuss the contents of the second note. Tr. at 574-75; Pet.'s Br. at 10. However, codefendant's counsel did consult with Petitioner to formulate a response with respect to the second jury note. *Id.* Petitioner consented to have codefendant's counsel represent him during the court's response to the jury's second note. Tr. at 575. The court informed the jury of the arrangement between Petitioner and codefendant's counsel. *Id.* at 578-79.

In its denial of Petitioner's appeal, the Appellate Division held that this claim lacked merit because Petitioner's counsel consulted with codefendant's counsel for the first jury note and codefendant's counsel acted as Petitioner's attorney during the court's response to the second jury note. *Watson*, 115 A.D.3d at 689 (citing *People v. Pena,* 81 A.D.3d 412, 412 (1st Dep't 2011) and *People v. Hunt*, 227 A.D.2d 568, 569 (2d Dep't 1996)). The court further held that the joint representation by codefendant's counsel "presented only a *potential* conflict of interest." *Watson*, 115 A.D.3d at 689 (emphasis added). The court found that "the record demonstrates that the defenses presented by the codefendant and [Petitioner] were not inconsistent, and the brief period of joint representation resulted only in the court giving the same instruction on constructive possession that it had given already when [Petitioner]'s counsel was present." *Id.* at 689-90.

Petitioner collaterally attacks his conviction, which had been reviewed and upheld by the state courts. As such, Petitioner must show that the state court's decision on the issue of ineffective assistance of counsel was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

In *Strickland v. Washington*, the Supreme Court set forth a two-part test that must be satisfied by petitioners raising Sixth Amendment challenges to criminal convictions. 466 U.S. 668

(1984). Petitioner must demonstrate both that: (1) counsel's performance was so unreasonable under prevailing professional norms that "counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment," and (2) counsel's ineffectiveness prejudiced defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687 and 694. "To establish a *Strickland* claim, the likelihood of a different result in the absence of the alleged deficiencies in representation must be substantial, not just conceivable." *Waiters v. Lee*, 857 F.3d 466, 469 (2d Cir. 2017) (internal quotations and citations omitted).

Petitioner cannot satisfy the requirements of *Strickland*. It was not objectively unreasonable for Petitioner's attorney to leave the courtroom during jury deliberations to attend to another matter, particularly after having obtained permission from the court to do so. Petitioner's counsel acted reasonably when he arranged for codefendant's counsel to represent Petitioner while counsel was unavailable. The trial court and the jury were apprised of this agreement. Tr. at 568-69. Notably, Petitioner consented to the arrangement and agreed to proceed without his own counsel present. *Id.* at 575.

Even assuming, *arguendo*, that Petitioner's counsel acted unreasonably when he left the courtroom, Petitioner cannot show prejudice from his counsel's brief absence. Codefendant's counsel consulted with Petitioner's counsel to formulate a response to the first jury note. *Id.* at 573-74. Although codefendant's counsel was unable to consult with Petitioner's counsel to formulate a response to the second jury note, Petitioner was not prejudiced. In response to the second jury note, the court merely repeated an instruction the jury had heard before deliberations and for which Petitioner's counsel had been present. *Id.* at 575. Additionally, the brief joint representation by codefendant's counsel did not prejudice Petitioner because Petitioner's defense

was not inconsistent with his codefendant's defense. Petitioner has failed to demonstrate that his fleeting representation by codefendant's counsel presented a conflict of interest. *See*, *Cuyler v. Sullivan*, 446 U.S. 335, 350 (1980) ("[U]ntil a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance.").

Petitioner has failed to demonstrate a Sixth Amendment violation from his trial counsel's brief absence during jury deliberations. Under the circumstances here, he cannot show either objectively unreasonable conduct by his counsel, ensuing prejudice from his counsel's brief absence during jury deliberations, or conflict from his brief joint representation by codefendant's counsel. Accordingly, this claim fails.

**B.      Claim 3, Suppression of Evidence**

Petitioner argues that the trial court should have suppressed the contraband seized by the police from Petitioner's home without a warrant. *See*, Pet. at 9; *See also,* Pet.'s Br. at 38-42. Respondent contends that Petitioner's claims is not cognizable on habeas review pursuant to *Stone v. Powell*, 428 U.S. 465 (1976).

On appeal, the Appellate Division considered Petitioner's suppression claim and held that the police lawfully seized the contraband from Petitioner's home. *Watson*, 115 A.D.3d at 688. The court held that "the police justifiably entered the [Petitioner]'s home in 'hot pursuit' of Thomas and they were still looking for Thomas when they saw the marijuana in the living room and kitchen and when they forced their way into the bathroom, encountered the [Petitioner], and saw the gun in the open hamper." *Id.* (citing *People v. Brantley*, 189 A.D.2d 886 (2d Dep't 1993)).

Federal habeas review of Petitioner's Fourth Amendment claim is subject to the rule of *Stone v. Powell*, in which the Supreme Court held that federal habeas corpus review is unavailable

for Fourth Amendment claims where the petitioner had the opportunity to litigate the claim fully in state court. 428 U.S. at 494 ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). The Supreme Court reasoned that, in the habeas corpus context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Id.* at 494-95.

Relying on *Stone,* the Second Circuit has held that habeas corpus review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures to redress Fourth Amendment violations," or where there is a corrective procedure, "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." *Gates v. Henderson*, 568 F.2d 830, (2d Cir. 1977) (*en banc*). "[T]he federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in [N.Y. Crim. Proc. Law § 710.10], as being facially adequate." *Cappellan v. Riley*, 975 F.2d 67, 70 n.1 (2d Cir. 1992) (internal quotations and citations omitted); *See also, e.g., Guzman v. Greene,* 425 F. Supp.2d 298 (E.D.N.Y. 2006); *Daily v. New York*, 388 F. Supp.2d 238, 249 (S.D.N.Y. 2005) ("The State of New York clearly has provided defendants . . . with the necessary corrective procedure through Section 710 of the New York Criminal Procedure Law.") (citations omitted). Therefore, Petitioner must demonstrate that an unconscionable breakdown in the process afforded by New York law prevented his litigation of his Fourth Amendment claims.

Petitioner has failed to show that he was deprived of the opportunity to utilize the corrective process afforded by New York law. Petitioner availed himself of Section 710 of New York Criminal Procedure Law when the court held a suppression hearing. *See*, Supp. Tr. Moreover,

the decision of the trial court denying suppression was upheld on appellate review. Accordingly, Petitioner's Fourth Amendment claims are barred from review by this Court.

### C.    Claim 10, Sufficiency and Weight of the Evidence at Trial

Petitioner contends that the Court should reverse Petitioner's conviction because the grounds for conviction are against the weight of the trial evidence. Pet. at 20; Pet.'s Br. at 50-55. Respondent contends that Petitioner's claims partially are procedurally barred, partially are not cognizable on federal habeas review, and entirely meritless. Resp.'s Opp. at 27-32. Petitioner raised these identical claims on direct appeal and the New York Appellate Division held that Petitioner's claims were unpreserved for appellate review and without merit. *Watson*, 115 A.D.3d at 690.

At the close of the state's case, Petitioner's counsel moved to dismiss three of the charges against Petitioner: criminal possession of a weapon in the third degree, resisting arrest, and criminal possession of marijuana but did not move to dismiss the second degree criminal possession of a weapon charge. Tr. At 327. The trial court granted the motion to dismiss the third degree criminal possession of a weapon charge, but otherwise denied the motion. As such, Petitioner failed to preserve for appellate review his claim that the state presented insufficient evidence to convict Petitioner of second degree criminal possession of a weapon. *Watson*, 115 A.D.3d at 690. Nonetheless, in the alternative, Petitioner's legal insufficiency claim as to his weapon possession conviction is without merit.

#### i.    *Legal Sufficiency*

"The Due Process Clause of the Fourteenth Amendment prohibits conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which the defendant is charged." *Einaugler v. Supreme Court of State of N.Y.*, 109 F.3d 836, 839 (2d Cir.

1997) (internal quotation marks omitted). Petitioner bears a heavy burden for a legal sufficiency claim on habeas review because the reviewing court must find that, "viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Even when "faced with a record of historical facts that supports conflicting inferences, [this Court] must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) (quoting *Jackson*, 443 U.S. at 326). Thus, "[a] habeas court will not grant relief on a sufficiency claim unless the record is 'so totally devoid of evidentiary support that a due process issue is raised.'" *Sanford v. Burge*, 334 F. Supp.2d 289, 303 (E.D.N.Y. 2004) (quoting *Bossett v. Walker*, 41 F.3d 825, 830 (2d Cir. 1994)). "A federal court must look to state law to determine the elements of the crime" in its determination of a sufficiency of the evidence claim. *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under New York Penal Law § 221.05, "[a] person is guilty of unlawful possession of marihuana when he knowingly and unlawfully possesses marihuana." Possession may be proven by either actual physical possession or by constructive possession. *See*, N.Y. Penal Law § 10.00(8). Constructive possession requires a "show[ing] that the defendant exercised dominion or control over the property by a sufficient level of control over the area in which the contraband is found or over the person from whom the contraband is seized." *People v. Manini*, 79 N.Y.2d 561, 573 (1992) (collecting cases); *See also, United States v. Facen*, 812 F.3d 280, 286-87 (2d Cir. 2016) ("Constructive possession exists when a person has the power and intention to exercise dominion and control over an object.") (citation omitted). The state established Petitioner's constructive possession of marijuana. A police officer testified that he smelled a strong marijuana

odor and saw, in plain view, loose marijuana and a scale on a coffee table in the living room of Petitioner's apartment. Tr. at 31. The same officer testified that police recovered marijuana and a scale from a center island in Petitioner's kitchen. *Id.* at 39-40, 47-49. Petitioner presented no evidence to dispute the officer's testimony. *See generally, Id.* Petitioner also did not dispute that the police recovered the marijuana in his residence. *Id.* Thus, viewing the evidence in the light most favorable to the prosecution, the state presented sufficient evidence for a jury to find beyond a reasonable doubt that Petitioner exercised dominion or control over the marijuana seized from his home. *See*, *Facen*, 812 F.3d 280, 287-88 (finding defendant's constructive possession of contraband in plain view of a residence associated with defendant).

Under New York Penal Law § 205.30, "[a] person is guilty of resisting arrest when he intentionally prevents or attempts to prevent a police officer or peace officer from effecting an authorized arrest of himself or another person." A resisting arrest conviction requires a showing of a valid warrant or probable cause for the arrest. *See*, *Hanson v. New York City¸* 2018 WL 1513632, at *12 (E.D.N.Y. Mar. 27, 2018) (citing *Weyant v. Okst*, 101 F.3d 845, 855 (2d Cir. 1996)). Here, the government established that the police had probable cause to arrest Petitioner. The police entered Petitioner's home under exigent circumstances, in "hot pursuit" of Thomas, who had fled from the police earlier. *See*, *Duncan v. City of New York*, 2017 WL 3105856, at *10 (E.D.N.Y. July 21, 2017) ("[I]t is well-settled that it is constitutionally permissible for the police to make a warrantless entry into a private place when the police are in 'hot pursuit' of a suspect.") (citing *United States v. Santana*, 427 U.S. 38, 42-43 (1976)); *See also, United States v. Webster*, 79 F. Supp.3d 417, 422 (E.D.N.Y. 2015) ("The hot pursuit doctrine applies when a pursuit is immediate and relatively continuous from the scene of a crime.") (citations omitted). Once inside Petitioner's home, an officer smelled and saw, in plain sight, marijuana on a coffee table. Tr. at

31.  An officer testified that he heard a noise coming from the bathroom, and eventually discovered Petitioner inside the bathroom.  *Id.* at 36-41.

Petitioner resisted arrest by refusing to allow officers into the bathroom or leaving the bathroom.  *Id.* at 41-42.  The officer forced the bathroom door open and, with assistance from other officers, subdued Petitioner.  *Id.* at 42-43.  Petitioner struggled as officers physically dragged him out of the bathroom.  *Id.* at 42-43.  Petitioner presented no evidence at trial to dispute the officer's testimony.  *See generally, Id.*  Accordingly, viewed in the light most favorable to the prosecution, there was sufficient evidence for a jury to find beyond a reasonable doubt that Petitioner resisted arrest.

Under New York Penal Law § 265.03(1)(b), "[a] person is guilty of criminal possession of a weapon in the second degree when[,] with intent to use the same unlawfully against another, such person[ ] possesses a loaded firearm."  An officer testified that, inside the bathroom in which he found Petitioner, the officer found a loaded pistol in plain view.  Tr. at 42-45.  The officer further testified that the pistol was close enough to where the police found Petitioner that Petitioner could have reached down and picked it up.  *Id.* at 44-45.  Petitioner provided no evidence to rebut the officer's testimony.  *See generally, Id.*  The state presented sufficient evidence for a jury to find that Petitioner constructively possessed the gun, which was in Petitioner's dominion or control.  *See*, *Manini*, 79 N.Y.2d at 573-74 (collecting cases); *See also, Facen*, 812 F.3d at 287. Additionally, under New York law, possession of a loaded weapon is rebuttable presumptive evidence of an intent to use it unlawfully against another.  *See*, *United States v. Lynch*, 518 F.3d 164, 172 n.11 (2d Cir. 2008); *People v. Joyner*, 126 A.D.3d 1002, 1006 (2d Dep't 2015); *People v. Vincent*, 80 A.D. 3d 633, 634 (2d Dep't 2011).  Thus, viewed in the light most favorable to the

prosecution, there was sufficient evidence for a jury to find beyond a reasonable doubt that Petitioner possessed a gun with the intent to use it unlawfully against another.

ii.     *Weight of the Evidence*

Petitioner's claim that the verdict was against the weight of the evidence is not cognizable on federal habeas review.  *See*, *Arena v. Perez*, 2017 WL 2634158, at *5 (E.D.N.Y. June 19, 2017) (citing *Young v. Abrams*, 698 F.2d 131, 135-36 (2d Cir. 1983)); *See also, United States v. Parker*, 903 F.2d 91, 97 (2d Cir. 1990), *cert. denied,* 498 U.S. 872 (1990) ("[T]he weight of the evidence is a matter for argument to the jury. . . and we must defer to the jury's assessments of both the weight of the evidence and the credibility of the witnesses.") (citations omitted).  Accordingly, this claim is denied.

**D.     Claims 2, 4 through 11, Procedurally Barred Claims; and Claim 12, Ineffective Assistance of Counsel for Failure to Preserve Procedurally Barred Claims**

Petitioner further claims that: (2) the gun possession conviction should be reversed because Petitioner possessed the gun in his home; (4) the indictment was duplicitous; (5) the court should have severed Petitioner's trial from Brown's trial; (6) the jury should have been asked to consider whether Petitioner had temporary innocent possession of the gun; (7) the court should have delivered a circumstantial evidence charge to the jury; (8) the verdict sheet was incorrect; (9) the court unfairly marshaled the evidence; (10) the trial evidence was insufficient to support Petitioner's second degree possession of a weapon conviction; (11) the prosecutor committed misconduct in summation; and (12) Petitioner's counsel was ineffective to the extent that counsel did not preserve these argument.  *See*, Pet. at 6-12, 18-20.  The Appellate Division dismissed claims (4) and (10) as unpreserved for appeal, and alternatively on the merits after detailed analysis.  *Watson*, 115 A.D.3d at 688-89.  The Appellate Division summarily dismissed

Petitioner's remaining claims as "unpreserved for appellate review and, in any event, without merit." *Id.* at 690.

A federal court need not address the merits of any claim that is procedurally defaulted. *Harrington v. Richter*, 562 U.S. 86, 113 (2011). A petitioner procedurally defaults "if the state court's rejection of a federal claim rests on state law grounds – such as the operation of a state procedural rule – that is both independent of the federal question and adequate to support the judgment." *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) (internal quotations and citations omitted). The rule applies with equal force whether the state law ground is substantive or procedural. *Coleman v. Thompson*, 501, U.S. 722, 729 (1991). "When a state court finds that a claim is not preserved, but then holds 'in any event' on the merits, the claim is procedurally defaulted." *Kennedy v. Connolly*, 2017 WL 496071, at *12 (E.D.N.Y. Feb. 6, 2017) (citing *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005)); *See also, Boyd v. Griffin*, 2014 WL 1797477, at *9 (E.D.N.Y. May 7, 2014) ("A statement that a petitioner's claim was 'unpreserved' is sufficient to establish that [the appellate court] was relying on a procedural bar as an independent ground in disposing of the issue.")

A federal court may review a claim that is procedurally barred by an independent and adequate state ground if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *See also, House v. Bell*, 547 U.S. 518, 536 (2006) (citations omitted). A miscarriage of justice is demonstrated in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who actually is innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Petitioner claims his trial counsel was ineffective to the extent counsel failed to preserve his remaining claims. *See*, Pet. at 6-12, 18-20; *See generally,* Pet.'s Br. In some circumstances, ineffective assistance of counsel may constitute "cause" sufficient to avoid a procedural default. *Tavarez v. Larkin,* 814 F.3d 644, 650 (2d Cir. 2016) (citing *Edwards v. Carpenter*, 529 U.S. 446, 450-51 (2000).[2] There is an open question in the Second Circuit as to whether *de novo* review or AEDPA deference applies when a habeas petitioner advances a claim of ineffective assistance as cause to excuse procedural default. *See*, *Id.* However, even if Petitioner could show cause to excuse his procedural default, his underlying claims fail to provide grounds for granting his habeas petition. *See*, *Id.* Here, the Court examines the merits of Petitioner's claims applying AEPDA's deferential standard because the state appellate court found Petitioner's claims both procedurally barred and without merit. *Id.*

For the reasons set forth below, Petitioner has failed to establish that the state court's determination that his claims were "without merit" was an unreasonable application of clearly established Supreme Court law or an unreasonable determination of the facts in light of the evidence adduced at his trial.

i.     *Claim 2, Challenges to the Second Degree Weapon Charge*

Petitioner maintains that N.Y. Penal Law § 265.03(3) provides an exemption to his second degree weapon possession charge because the police found the weapon in Petitioner's home. *See*, Pet. At 7; Pet.'s Br. at 31-37. N.Y. Penal Law § 265.03(3) states that possession of a loaded firearm does not constitute a violation of that subdivision if the possession took place in a person's home or place of business. Respondent correctly contends that the "home exception" found in that subdivision does not apply to the weapon charge filed against defendant pursuant to

---

[2] Petitioner provides no alternative cause for his procedural default. Additionally, Petitioner does not and cannot make an "actual innocence" claim.

§ 265.03(1)(b).  *See*, *Gonzalez v. Lee*, 2017 WL 3600406, at *13 (E.D.N.Y. Aug. 17, 2017) ("Possession of a loaded firearm in a place other than one's home or business (Penal Law § 265.03(3)) and possession of a firearm with intent to use it unlawfully against another person (Penal Law § 265.03(1)) are distinct crimes.") (citations omitted).

Petitioner also argues that the trial court should not have charged the jury as to the presumption of intent to use the weapon against another in connection with the weapon charge set forth in N.Y. Penal Law § 265.15(4).  *See*, Pet. At 7; Pet.'s Br. at 31-37.  However, possession of a loaded weapon is rebuttable presumptive evidence of an intent to use it unlawfully against another under the New York law.  *See*, *Lynch*, 518 F.3d at 172 n.11; *Joyner*, 126 A.D.3d at 1006 (2d Dep't 2015); *Vincent*, 80 A.D. 3d at 634.  Petitioner presented no evidence at trial to rebut such a presumption.  *See generally*, Tr.

Accordingly, under AEDPA's deferential standard, the state court reasonably could find that Petitioner was not entitled to a "home exception" to his weapon charge and that the trial court properly instructed the jury on the presumption of intent to use the firearm against another.  Petitioner's jury instruction claim raises no federal law or Constitutional concern.

### ii.  *Claim 4, Duplicitous Indictment*

Petitioner contends that the indictment was duplicitous because it did not identify which gun and marijuana stash Petitioner possessed.  *See*, Pet. at 10-11; Pet.'s Br. at 43-45.  The Appellate Division engaged in a detailed analysis of this claim and found that, "[t]he count charging the defendant with criminal possession of a weapon in the second degree charged the possession of one weapon."  *Watson*, 115 A.D.3d at 689 (internal citation omitted).  The Appellate Division added that, "there was no danger of a nonunanimous verdict with respect to which gun the defendant possessed.  At trial, the prosecutor specified in his opening statement and summation

which of the two weapons was the subject of that count. Further, the court specified in its instructions to the jury which weapon was the subject of the weapon possession count against defendant." *Id.* Although the Appellate Division did not provide a detailed analysis of Petitioner's duplicitous marijuana charge claim, it found that claim without merit summarily. *Id.* at 690.

In New York, Criminal Procedure Law § 200.30(1) specifies, "[e]ach count of an indictment may charge one offense only." "Such state law requirements cannot be considered by federal courts in habeas review." *Jones v. Lee*, 2013 WL 3514436, at *7 (S.D.N.Y. July. 12, 2013) (citing 28 U.S.C. § 2254(a)). However, the Supreme Court has outlined two requirements that an indictment must meet to be constitutionally sufficient: "'first, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or conviction in bar of future prosecutions of the same offense.'" *United States v. Resendiz–Ponce*, 549 U.S. 102, 108 (2007) (alterations in original) (quoting *Hamling v. United States*, 418 U.S. 87, 117 (1974)). "[A]n indictment need do little more than track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime." *United States v. Alfonso*, 143 F.3d 772, 776 (2d Cir. 1998) (internal quotations and citations omitted).

The indictment alleged that Petitioner, "on or about June 30, 2009, in the County of Queens, knowingly possessed a loaded firearm, to wit: a pistol, with the intent to use [sic] unlawfully against another." Indictment at Count Two. The existence of multiple firearms in the underlying offense does not change the constitutional minimum requirements for an indictment, since a description of the specific gun employed is not an element of the offense. *See*, *People v. Buanno*, 296 A.D.2d 600, 601 (3d Dep't 2002). The trial court made clear that the indictment charged Petitioner with possession of "a 40-millimeter Glock pistol . . . allegedly found the

bathroom." Tr. at 551. Petitioner was not at risk of double jeopardy for the weapon possession charge.

Similarly, the indictment was not duplicitous for charging Petitioner with possession of marijuana. The indictment alleged that Petitioner "on or about June 30, 2009, in the county of Queens, knowingly and unlawfully possessed marihuana." Indictment at Count Eleven. Although the police seized two separate amounts of marijuana from Petitioner's apartment, the indictment charged Petitioner generally with possession of all of the marijuana found in Petitioner's apartment.

Under AEDPA's deferential standard, the state court reasonably could find that the indictment against Petitioner was not duplicitous. That finding does not violate federal law or the Constitution and is not reviewable in a federal habeas corpus petition.

### iii. Claim 5, Severance from Brown's Trial

Petitioner argues that the court should have severed his trial from codefendant Brown's trial based on testimony from a police officer that Brown asked the police how many guns the police had recovered from Petitioner's home. Pet.'s Br. at 46. Petitioner claims this testimony implicated him in the gun possession charge, violated Petitioner's confrontation rights, and resulted in an uncharged bad act against Petitioner. *Id.* Respondent counters both that Petitioner's claim is not cognizable on habeas review and is without merit. *See*, Resp.'s Opp. at 40-43.

"Improper joinder of charges against a defendant does not, in itself, amount to a constitutional violation." *See*, *McKinnon v. Superintendent Great Meador Corr. Facility*, 422 F. App'x 69, 72 (2d Cir. 2011) (summary order) (citing *United States v. Lane*, 474 U.S. 438, 446 n.8 (1986)). Misjoinder "rise[s] to the level of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth Amendment right to a fair trial." *Lane*, 474 U.S. at 446

n.8.  To claim a "due process violation based upon joinder of offenses . . . [a petitioner] must, to succeed, go beyond the potential for prejudice and prove that *actual* prejudice resulted from the events as they unfolded during the joint trial."  *Herring v. Meachum*, 11 F.3d 374, 377-78 (2d Cir. 1993) (emphasis in original) (internal quotations and citations omitted).  "[T]he potential for prejudice arising from joinder of offenses is insufficient to warrant reversing a presumptively valid state court conviction."  *Id.* at 379.

Petitioner has failed to make the required showing of prejudice.  First, his confrontation argument is without merit.  The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI. "The crux of this right is that the government cannot introduce at trial statements containing accusations against the defendant unless the accuser takes the stand against the defendant and is available for cross examination."  *Ryan v. Miller*, 303 F.3d 231, 247 (2d Cir. 2002) (citing *Bruton v. United States*, 391 U.S. 123, 128 (1968)).  A codefendant who has the right against self-incrimination is not considered available for cross-examination and if a codefendant's statement directly implicates the defendant, severance is required.  *See*, *Bruton*, 391 U.S. at 137 (1968).  "[T]estimony that indirectly includes an accusation against the defendant may violate the Confrontation Clause even if the testimony is not a direct reiteration of the accusatory assertion."  *Id.* at 248.

However, the Confrontation Clause "does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted."  *Crawford v. Washington*, 541 U.S. 36, 59 n.9 (citing *Tennessee v. Street*, 471 U.S. 409, 414 (1985)).  Such statements escape constitutional scrutiny only if: "(1) 'the non-hearsay purpose by which the evidence is sought to be justified is relevant,' and (2) 'the probative value of this evidence for its non-hearsay purpose

is [not] outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the declarant's statement.'" *Ryan*, 303 F.3d at 252-53 (quoting *United States v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994)).

During direct examination of an arresting officer, the prosecutor elicited testimony that codefendant Brown asked the officer how many guns he had found in Petitioner's apartment. Tr. at 52. During cross-examination, codefendant's counsel elicited similar testimony. *Id.* at 195. However, these statements were not hearsay statements that accused Petitioner of possessing a gun. Instead, the testimony reasonably implied Brown's knowledge of the location of the weapons, a fact relevant to the weapons possession charge against Brown. *Id.* at 519-20. Additionally, the testimonial statement was "[f]ar from being the 'lynchpin of the prosecutor's circumstantial case,'" and resulted in no prejudice through an uncharged bad act or violation of the Confrontation Clause. *Tucker v. Heath*, 2016 WL 354878, at *6 (E.D.N.Y. Jan. 28, 2016) (quoting *Ryan*, 303 F.3d at 254)).

Under AEDPA's deferential standard, the state court reasonably could have determined that Petitioner's trial did not require severance. Moreover, the joinder did not violate federal law or the Constitution. Accordingly, the claim fails.

iv.     *Claims 6 and 7, Jury Charges*

Petitioner contends that the trial court should have instructed the jury that petitioner could have had temporary innocent possession of the gun. Pet. at 19; Pet.'s Br. at 46-47. Petitioner also argues that the court should have instructed the jury that the evidence of his possession of the gun and marijuana was based on circumstantial evidence. *Id.*   Respondent argues that these claims are unexhausted, not cognizable under federal law, and meritless. Resp.'s Opp. at 44-46.

Here, Petitioner was not entitled to a temporary innocent possession jury charge or a circumstantial evidence jury charge as to the gun possession charges. "[T]o trigger the right [to a temporary innocent possession jury charge], there must be proof in the record showing a legal excuse for having the weapon in [petitioner's] possession as well as facts tending to establish that, once possession has been obtained, the weapon had not been used in a dangerous manner." *People v. Williams,* 50 N.Y.2d 1043, 1045 (1980) (citations omitted). No such facts exist in the record of this case. Additionally, "[u]nder New York law, an instruction on the law of circumstantial evidence is only appropriate if the evidence of a defendant's participation in a crime is *wholly circumstantial.*" *Pittman v. Ecole*, 2015 WL 1886964, at *12 (E.D.N.Y. Apr. 24, 2015) (emphasis in original) (citing *People v. Roldan,* 88 N.Y.2d 826, (1996) and *People v. Barnes*, 50 N.Y.2d 375 (1980)). Petitioner was not entitled a circumstantial evidence jury charge because the state presented direct evidence of Petitioner's guilt as to the gun charge. Petitioner's claim that the court should have provided a circumstantial evidence charge as to the marijuana charge is meritless because the trial court did give a circumstantial evidence charge to the jury for the marijuana possession charge. Tr. at 557-58, 582.

Under AEDPA's deferential standard, the state court reasonably could have determined that Petitioner was not entitled to innocent possession or circumstantial evidence jury instructions. Petitioner's claim raises no question of federal law and the Petition is denied as to these claims.

### v.     Claim 8, Incorrect Verdict Sheet

Petitioner claims that the verdict sheet confused the jury because it did not incorporate the count numbers used in the indictment. Pet. at 19; Pet.'s Br. at 48. Specifically, Petitioner alleges that, because the count numbers used on the verdict sheet were different from those in the indictment, the court risked jury confusion when it issued the verdict sheet. *Id.* Respondent argues

that this claim is procedurally barred because Petitioner did not present it as a federal constitutional claim on direct appeal and meritless because there was no danger of jury confusion. Resp.'s Opp. at 48-49.

The Court agrees that Petitioner's claims are procedurally barred as it pertains to a matter of record and Petitioner has not proffered a reason for failing to raise it in state court. Nonetheless, Petitioner's claims are without merit. The verdict sheet clearly specified only the three counts against Petitioner. *See*, Verdict Sheet at SR 194, Dkt. Entry No. 9-3. Accordingly, this claim is dismissed.

> ### *vi.* *Claim 9, Marshaling of the Evidence*

Petitioner contends that the trial court marshaled the evidence improperly in its charge to the jury when it employed a fact pattern similar to the state's case. Pet. at 19; Pet.'s Br. at 48. Specifically, Petitioner alleges that the fact pattern included an instruction that defendant is more likely to be guilty if the gun was found in "some article of furniture or in a trunk or in a bag *of* clothing." Pet.'s Br. at 48 (purporting to quote the jury instructions in the trial transcript). Petitioner alleges that a "bag of clothing" is strikingly similar to a hamper, which is where the police found the gun possessed by Petitioner. Respondent counters that the claim has no merit because Petitioner misquoted the court. Resp.'s Opp. at 46-48. The Court concurs with Respondent.

The jury instruction in question stated as follows:

> The following indicia of constructive possession among others may be considered by you in arriving at your decision: If weapon is found in premises of which the defendant is the owner, lessee or sole occupier, such factor may be considered by you as some indication that he possessed the weapon. If it is found in some article of furniture or in a trunk, bag *or* clothing which belongs to and is used exclusively by a defendant, such factor may also be considered by you as some indication that he possessed it.

Tr. at 547, 586 (emphasis added).  Petitioner clearly misstated the jury instructions, which were not similar to the facts in Petitioner's case and Petitioner suffered no prejudice.

Additionally, "the propriety of a state trial court's jury instructions is ordinarily a matter of state law that does not raise a federal constitutional question." *Copeland v. Walker*, 258 F. Supp.2d 105, 137-38 (E.D.N.Y. 2003) (citing *Cupp v. Naughten*, 414 U.S. 141, 146 (1973) and other cases). To obtain habeas relief, a petitioner must establish "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146.  "The question is not whether the trial court gave a faulty instruction, but rather 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (quoting *Cupp*, 414 U.S. at 147 and citing *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting and reaffirming *Cupp*)).

Petitioner has not and cannot establish that the state court's fact pattern instruction "infected the entire trial" resulting in a violation of due process.  Under New York law, the trial court is not required to marshal the evidence, except to the extent necessary to explain the application of the law to the facts.  *See*, *People v. Saunders*, 64 N.Y.2d 665, 667 (1984); N.Y. Crim. Proc. § 300.10(2).  The same is true in federal courts.  *See*, *United States v. Carmona*, 361 F. App'x 166, 172 (2d Cir. 2010) (summary order) (citing *United States v. GAF Corp.*, 928 F.2d 1253, 1263 (2d Cir.1991)).  Furthermore, the state court's instructions were impartial and were not "sufficiently harmful to make Petitioner's conviction unfair." *Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005).

Under AEDPA's deferential standard, the state court reasonably could determine that the court marshaled the evidence properly.  The court's jury instructions did not violate clearly

established federal law and trial counsel was not ineffective for failing to preserve that meritless argument for appeal.

<em>vii.　Claim 10, Insufficient Evidence of Second Degree Weapon Charge</em>

As discussed above in Part II.C.i, Petitioner's claims concerning the insufficiency of the evidence supporting his second degree weapon possession conviction were meritless. As such, trial counsel was not obligated to raise this meritless claim at trial.

<em>viii.　Claim 11, Prosecutorial Misconduct</em>

Finally, Petitioner contends that the prosecution committed misconduct by commenting during summation that the jury could conclude that the defendant had been using marijuana because his arrest photo showed he had bloodshot eyes. Pet. at 18; Pet.'s Br. at 49. Respondent alleges that Petitioner misrepresents the prosecutor's argument and his prosecutorial misconduct claim is without merit. Resp.'s Opp. at 49-50. Respondent is correct that Petitioner misstates the prosecutor's statement. The prosecutor did not refer to Petitioner in his comments, but instead told the jury to "look at the arrest photos of defendant *Brown*," and commented that *Brown's* red and watery eyes were "the eyes of a man who's been using marijuana." Tr. at 521 (emphasis added). The prosecutor's statements did not prejudice Petitioner because those statements had nothing to do with Petitioner.

For the reasons set forth above, even assuming Petitioner can show "cause" by alleged ineffective assistance of counsel for his counsel's failure to preserve his claims, the underlying claims fail under the deferential AEDPA standard because they are meritless. *See*, *Tavarez*, 814 F.3d at 651-52.

## **CONCLUSION**

For the reasons set forth above, the Petition made pursuant to 28 U.S.C. § 2254 is dismissed in its entirety.  Petitioner is denied a certificate of appealability as he fails to make a "substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *See*, Fed. R. App. P. 22(b); *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Lucidore v. New York State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000).  The Court certifies that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of any appeal.  *See*, *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
　　　 March 31, 2019

_____ /s/
DORA L. IRIZARRY
Chief Judge